# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DABECCA NATURAL FOODS, INC., ) | |
| Plaintiff, ) | Case No. 14 C 6100 |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| RD TRUCKING, LLC, TOTAL QUALITY ) | |
| LOGISTICS, LLC, SHELBY COUNTY ) | |
| COOKERS n/k/a MONOGRAM ) | |
| PREPARED MEATS, LLC, and ) | |
| WESTIN PACKAGED MEATS, INC., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff DaBecca Natural Foods arranged for 6,910 pounds of fully cooked bacon to be transported from Iowa to Chicago, Illinois. Despite DaBecca's admonitions about the temperature during transit, the bacon arrived spoiled in an insufficiently cooled truck. This lawsuit followed against RD Trucking (the company responsible for transporting the bacon), Total Quality Logistics (the entity that arranged for the transportation of the bacon), and Shelby County Cookers (now known as Monogram Prepared Meats) and Westin Packaged Meats (presumably the entities that produced the bacon).

Total Quality Logistics seeks to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) based on the forum selection clause in its agreement with DaBecca. In contrast, DaBecca contends that its Carmack Amendment claims against Total Quality Logistics trump the forum selection clause and that, in any event, the present dispute is outside the ambit of that clause. For the following reasons, Total Quality Logistics' motion to dismiss is denied but DaBecca has failed to show that venue is proper in this district based on the Carmack Amendment's venue provision, 49 U.S.C. § 14706(d). As detailed below, the parties must brief this issue.

# I. BACKGROUND[1]

DaBecca's amended complaint seeks damages arising from a spoiled interstate shipment of precooked bacon. According to the declaration of Marc Bostwick (an operational sales manager with Total Quality Logistics), Total Quality Logistics arranges for the transportation of its customers' freight utilizing independent motor carriers. (Bostwick Decl. ¶ 3, Dkt. 15.)[2] Bostwick asserts that DaBecca (through its Chief Financial Officer, William Vree) agreed to Total Quality Logistics' standard terms and conditions, which are attached to his declaration as Exhibit A.

In pertinent part, the terms and conditions provide that "Applicant [DaBecca] understands that Total Quality Logistics is a transportation broker who will arrange their freight to be transported by a third party motor carrier. Applicant understands and agrees that Total Quality Logistics cannot fill out the Bills of Lading nor be listed on the Bills of Ladings as the delivering carrier." (Bostwick Decl., Ex. A at § 9, Dkt. 15.) The terms and conditions also provide that "[t]he state courts located in Clermont County, Ohio shall have exclusive and irrevocable jurisdiction and shall be the exclusive venue with respect to any claim, counterclaim,

---

[1] When considering a Rule 12(b)(3) motion to dismiss for improper venue, the court may look at documents outside the pleadings. *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, No. 14-CV-7098, 2015 WL 764242, at *4 (N.D. Ill. Feb. 23, 2015) (citing *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 806 (7th Cir. 2011)). The court will thus consider the declarations and other documents submitted by the parties. The court has also considered DaBecca's motion for leave to file a sur-reply, as it finds that the filing of a sur-reply was warranted; DaBecca's motion for leave to file a sur-reply is, therefore, granted.

[2] Bostwick's declaration asserts that Total Quality Logistics is a "freight broker." This is a legal conclusion so the court will disregard it. *See Deutsche Bank Nat. Trust Co. v. Tapla*, No. 11 C 4338, 2013 WL 4804855, at *2 n.2 (N.D. Ill. Sept. 9, 2013).

or dispute arising in connection with any transactions, loads, or other business between Total Quality Logistics and applicant." (*Id.* at § 11.)

In June 2013, pursuant to DaBecca's directions, Total Quality Logistics arranged for RD Trucking to provide freight services between Iowa and Illinois for a delivery of precooked bacon.[3] DaBecca gave Total Quality Logistics instructions about the required temperature of the truck and the bacon during transit. Total Quality Logistics thus knew about the temperature requirements and "agreed to . . . ensur[e] the proper temperature of the [truck and bacon] during the shipment process." (Am. Compl. ¶ 15, Dkt. 21.) According to DaBecca, Total Quality Logistics erroneously gave RD Trucking written information about the truck's temperature that specified that the truck had to be 34 degrees rather than 26 degrees. This conflicted with the bill of lading, which specified a truck temperature of 26 degrees. RD Trucking nevertheless knew that 26 degrees was the correct truck temperature.

DaBecca rejected the bacon upon delivery because the truck was 53 degrees and the bacon was 49 degrees. Because the bacon arrived at an unsafe temperature, DaBecca "made clear" that it could not be salvaged. (*Id.* ¶ 21.) Total Quality Logistics "informed [DaBecca] that it would work with RD [Trucking] relative to disposition of the [bacon]." (*Id.* ¶ 17.) Despite DaBecca's instructions to the contrary, Total Quality Logistics failed to communicate with RD Trucking appropriately and the bacon was released for human consumption, "causing [DaBecca] damages." (*Id.* ¶ 22.)

---

[3] Although not germane to the motion presently before the court, the court notes that DaBecca's amended complaint contains inconsistent allegations about its instructions regarding the appropriate temperature of the truck and the bacon. For example, DaBecca alleges that it directed that the bacon temperature in transit needed to be below 34 degrees (Am. Compl. ¶ 11, Dkt. 21), 40 degrees (*id.* ¶ 14), and 26 degrees (*id.* ¶ 18).

DaBecca alleges a Carmack Amendment claim (Count II), 49 U.S.C. § 14706, against Total Quality Logistics. It also asserts that Total Quality Logistics is liable for reasonable attorneys' fees based on the regulations associated with the Carmack Amendment (Count III), 49 C.F.R. §370, and state law claims of negligence (Count V), breach of contract (Count VI), and conversion (Count VII).

## II. LEGAL STANDARD

"A challenge to venue based upon a forum selection clause can appropriately be brought as a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3)." *Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 941 (N.D. Ill. 2011) (quoting *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006)). When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, at *5 (N.D. Ill. Jan. 29, 2015). Factual conflicts are resolved in the plaintiff's favor, and the court may draw reasonable inferences from those facts. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). If venue is improper, the court may either dismiss the suit or transfer it to a district in which it could have been brought. *See* 28 U.S.C. § 1406(a).

## III. DISCUSSION

Total Quality Logistics' motion to dismiss is based on the forum selection clause in the terms and conditions portion of the contact between it and DaBecca. DaBecca contends that regardless of the forum selection clause, the Carmack Amendment allowed it to file suit in this district. Alternatively, DaBecca it argues that even if the court rejects its Carmack Amendment

argument, the forum selection clause does not govern its claims against Total Quality Logistics.

**A.      The Carmack Amendment**

The Carmack Amendment to the Interstate Commerce Act addressed the "patchwork" of often conflicting state regulations governing the transportation of goods. *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). It also was "intended to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 634 (7th Cir. 2001) (internal quotations omitted).

The Carmack Amendment governs the liability of "motor carriers" and "freight forwarders." 49 U.S.C. § 14706(a)(1). It defines a "motor carrier" as an entity that delivers property and provides "transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105."[4] *Id.*; *see also* 49 U.S.C. § 13102(14) (defining a "motor carrier" as "a person providing motor vehicle transportation for compensation").[5] A "freight forwarder" is a subset of carriers, as it acts as "both the receiving and delivering carrier." 49 U.S.C. § 14706(a)(2). A "freight forwarder" is:

---

[4] Subchapter I grants the Secretary and the Surface Transportation Board jurisdiction over interstate transportation by motor carriers, to the extent that passengers or property are transported by the motor carrier. 49 U.S.C. § 13501. Subchapter III provides that jurisdiction is proper "over service that a freight forwarder undertakes to provide, or is authorized or required under this part to provide, to the extent transportation is provided in the United States and is between . . . a place in a State and a place in another State." 49 U.S.C. § 13531(a)(1).

[5] For the purposes of the Carmak Amendment, a "person" is "any individual, partnership, association, corporation, business trust, or any other organized group of individuals." 49 C.F.R. § 390.5.

> a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business –
>
> > (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> >
> > (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> >
> > (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8).

Total Quality Logistics contends that it is a "broker," not a "motor carrier" or "freight forwarder" (a type of carrier) and thus cannot be liable under the Carmack Amendment. *See Infinity Air, Inc. v. Echo Global Logistics, Inc.*, No. 3:13-CV-00307-MO, 2013 WL 3199657, at *2 (D.Or. June 20, 2013) ("[Section] 14706 imposes liability on a *carrier* for all losses relating to goods it transports in interstate commerce. It imposes no liability on brokers, and brokers and carriers are distinct under the Act.") (emphasis in original). A "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2); *see also* 49 C.F.R. § 371.2(a) (defining a "broker" as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the

transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.")

**B.     Carrier Versus Broker**

In support of its claim that it is a broker, Total Quality Logistics points to the portions of the amended complaint where DaBecca alleges that, "[Total Quality Logistics] . . . hired RD [Trucking] to provide freight services" and "arranged for RD Trucking to deliver the [bacon]." (Am. Compl. ¶¶ 10, 13, Dkt. 21.)  Total Quality Logistics also stresses that by agreeing to its standard terms and conditions, DaBecca agreed that it "underst[ood] that Total Quality Logistics is a transportation broker who will arrange their freight to be transported by a third party motor carrier" and "underst[ood] and agree[d] that Total Quality Logistics cannot fill out the Bills of Lading nor be listed on the Bills of Ladings as the delivering carrier."[6] (Bostwick Decl., Ex. A at § 9, Dkt. 15.)

In response, DaBecca argues that its amended complaint supports its claim that Total Quality Logistics acted as both a carrier and freight forwarder because Total Quality Logistics "handled matters related to the shipment that fell far outside the terms that are contemplated by the Terms and Conditions that are attached to [Total Quality Logistics'] Motion." (Pl. Resp. at 5, Dkt. 32.)  Specifically, DaBecca directs the court's attention to its allegations that Total

---

[6] Total Quality Logistics also contends that this court should find that it is a broker based on decisions from other courts in this circuit that reached this conclusion. *See*, *e.g.*, *VPP Group, LLC v. Total Quality Logistics, LLC*, No. 13-CV-185-WMC, 2014 WL 1515510, at *2 (W.D. Wis. Apr. 18, 2014) (holding, in the context of a motion for summary judgment, that "[Total Quality Logistics] does not ship or deliver anything itself, but instead coordinates and arranges, on behalf of its customers, for the truckload transportation of products and goods throughout the United States and North America.  This makes [it] a 'broker' in the parlance of interstate commerce").  The court declines to make any factual findings in this case based on summary judgment records in unrelated cases.

Quality Logistics "assumed responsibility to DABECCA for carrying out the delivery of the Product to DABECCA's facilities, and was the exclusive party relied upon by DABECCA to properly communicate the requirements relative to handling the shipment and the Product" and improperly allowed for disposition of DaBecca's shipment for human consumption without DaBecca's consent or permission. (Am. Compl. ¶¶ 12, 53-55, Dkt. 21.) In addition, DaBecca alleged that Total Quality Logistics "agreed to . . . ensur[e] the proper temperature of the [truck and bacon] during the shipment process." (*Id.* ¶ 15.) According to DaBecca, Total Quality Logistics advised DaBecca that it would work with RD Trucking to dispose of the spoiled bacon but then failed to communicate with RD Trucking appropriately, causing the bacon to be released for human consumption.

DaBecca then concludes that any ruling as to whether Total Quality Logistics is a carrier or a broker and "thus subject to the Carmack Amendment should be reserved until discovery is completed." (Pl.'s Sur-Reply at 4, Dkt. 35.) The case it cites in support – *Mach Mold Inc. v. Clover Assoc., Inc.*, No. 03 C 7757, 2004 WL 2005812, at *3 (N.D. Ill. Sept. 1, 2004) – does not stand for this proposition. In *Mach Mold*, the plaintiff filed suit based on the Carmack Amendment and state law. The defendant moved to dismiss the state law claims against it, arguing that they were preempted by the Carmack Amendment. The court denied the motion, reasoning that the sensible time to choose between the plaintiff's federal and state claims was after the close of discovery. *Mach Mold* is inapposite because Total Quality Logistics' arguments about venue turn on the sufficiency of the allegations in DaBecca's complaint, not preemption.

"There are no special pleading rules for [Carmack Amendment] claims." *Pizzo*, 258 F.3d at 634. The court agrees with the fundamental underpinning of Total Quality Logistics' position: it can be potentially liable under the Carmack Amendment only if it is a carrier. *See Walters Metal Corp. v. Universal Am-Can, Ltd.*, No. 13-CV-1271-SMY-DGW, 2015 WL 1880186, at *2 (S.D. Ill. Apr. 23, 2015) (holding that to be entitled to relief under the Carmack Amendment, a plaintiff must sue a carrier). DaBecca does not allege that Total Quality Logistics is a carrier because it provided motor vehicle transportation for the shipment of bacon. *See* 49 U.S.C. § 13102(14). Nevertheless, an entity need not perform trucking services to be a carrier as "[w]hether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F. Supp. 2d 920, 921-22 (N.D. Ill. 2003) (finding that a defendant's status was unclear when it did "not seem to be simply a broker, as it apparently undertook responsibility for making sure the equipment got from Tennessee to Texas").

"The difference between a carrier and a broker is often blurry." *Nebraska Turkey Growers Coop. Assoc. v. ATS Logistics Servs., Inc.*, No. 4:05CV3060, 2005 WL 3118008, at *4 (D.Neb. Nov. 22, 2005) (citing *Delta Research Corp. v. EMS, Inc.*, No. 04-60046, 2005 WL 2090890, at *5 (E.D. Mich. Aug. 29, 2005)). When distinguishing between a broker and a carrier, the court must determine if a defendant's actions were limited to arranging transport or if the defendant indicated that it would exert "some measure of control" over the shipment. *Hewlett-Packard Co. v. Brother'sTrucking Enters., Inc.*, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005) (denying defendant summary judgment on plaintiff's Carmack Amendment claim where it

"was hired to ensure that [that the shipper's] requirements were met" and promised the shipper that it would "provide control, the very latest systems, transportation savings and information," and "consistent and timely transit times with quality carriers"). The court must also consider whether the defendant "took legal responsibility for transporting the goods, regardless of who actually delivered them." *The Mason and Dixon Lines, Inc. v. Walters Metal Fabrication, Inc.*, No. 13-CV-1262-SMY- DGW, 2014 WL 4627715, *3 (S.D. Ill. Sept. 16, 2014). These are often fact-intensive inquiries. *See*, *e.g.*, *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 CIV. 2365 PGG, 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011) ("it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment.").

As noted above, a broker "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2); *see also* 49 C.F.R. § 371.2(a) (a broker "arranges, or offers to arrange, the transportation of property by an authorized motor carrier"). Some of the allegations in DaBecca's amended complaint suggest that Total Quality Logistics is a broker because it was merely responsible for arranging to transport the shipment of bacon. For example, the terms and conditions signed by DaBecca explicitly state that Total Quality Logistics is a broker and that "Applicant [DaBecca] understands that Total Quality Logistics is a transportation broker who will arrange their freight to be transported by a third party motor carrier. Applicant understands and agrees that Total Quality Logistics cannot fill out the Bills of Lading nor be listed on the Bills of Ladings as the delivering carrier." (Bostwick Decl., Ex. A at § 9, Dkt. 15.)

DaBecca, however, also alleges that Total Quality Logistics: (1) "assumed responsibility to DABECCA for carrying out the delivery of the Product to DABECCA's facilities, and was the exclusive party relied upon by DABECCA to properly communicate the requirements relative to handling the shipment and the Product," Am. Compl. ¶ 12, Dkt. 21; (2) "agreed to . . . ensur[e] the proper temperature of the [truck and bacon] during the shipment process," *id*. ¶ 15; and (3) was responsible for communicating DaBecca's requirements to other entities involved in the delivery process. In addition, DaBecca alleges that when the too-warm bacon arrived at its destination, Total Quality Logistics was still involved with the shipment as it told DaBecca that it would work with RD Trucking to deal with the bacon and failed to do so, causing the bacon to be released for human consumption.

These allegations – which were made subject to Rule 11 – may be belied by evidence adduced in discovery. But for now, they suggest that Total Quality Logistics did more than merely arrange for transportation of goods. Accordingly, at this stage in the proceedings, the court cannot find that Total Quality Logistics is a broker as a matter of law. This means that the court must determine how the existence of a colorable Carmack Amendment claim against Total Quality Logistics affects the forum selection clause in Total Quality Logistics' standard terms and conditions.

C. **Does the Existence of a Colorable Carmack Amendment Claim Mean that the Forum Selection Clause is Unenforceable?**

The Carmack Amendment provides that "[a] civil action under this section may be brought in a United States district court or in a State court." 49 U.S.C. § 14706(d)(3). With respect to venue, a civil action containing a Carmack Amendment claim may be brought against a delivering carrier in a district court of the United States in which the carrier operates and

against a carrier responsible for loss "in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 14706(d)(1) & (2).[7] "[I]n the case of a United States district court," the Carmack Amendment defines a judicial district as "a judicial district of the United States." 49 U.S.C. § 14706(d)(4)(A). "[I]n the case of a State court," a judicial district is "the applicable geographic area over which such court exercises jurisdiction." 49 U.S.C. § 14706(d)(4)(B).

The portions of the parties' briefs addressing the interplay of the Carmack Amendment and forum selection clauses do not address whether parties can contract around the Interstate Commerce Act's venue provisions. "Special venue provisions are typically attached to statutes creating substantive rights and control claims brought under such statutes." *Mandewah v. Wisconsin Dept. of Corr.*, No. 07 C 410, 2007 WL 4302790, at *1 (E.D. Wis. Dec. 06, 2007); *see also* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14D Federal Practice and Procedure: Jurisdiction 3d § 3803 (2007) (stating that "special venue provisions are exclusive"). Courts have recognized that "the inclusion of a special venue provision in an act of Congress may express a broader federal policy of ensuring access [by plaintiffs] to a federal forum to enforce certain statutory rights." *Martinez v. Bloomberg LP*, 740 F.3d 211, 229 (2d Cir. 2014).

No court in this circuit appears to have considered whether the Carmack Amendment's venue provisions trump a forum selection clause. Courts elsewhere, however, have held that

---

[7] The bacon shipment underlying the claims in this case was transported by truck. In its opposition to the motion to dismiss, DaBecca cites to a statutory venue provision that applies to rail carriers, 49 U.S.C. § 11706, and cases interpreting this provision. Rail transportation is not at issue and DaBecca has not provided any authority indicating that the rail transportation venue provision applies in cases involving goods transported by truck. Thus, the court will disregard DaBecca's citations to § 11706. As noted by Total Quality Logistics, this largely guts the Carmack Amendment–forum selection clause portion of DaBecca's brief.

§ 14706(d) is a special venue provision that precludes enforcement of a forum selection clause. *See Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121-22 & n. 7 (9th Cir. 2011) (the Carmack Amendment's venue provisions "assure the shipper a choice of forums as plaintiff" and "preclude enforcement of forum-selection agreements as to claims against both rail and motor carriers"); *Fed. Ins. Co. v. Bax Global Inc.*, No. 09-CV-2739 DGT, 2010 WL 3738033, at *4 (E.D.N.Y. Sept. 20, 2010) (considering whether the Carmack Amendment's "special venue provision" would have allowed an action to be brought in a proposed transferee district"); *Kyodo U.S.A., Inc. v. Cosco North Am. Inc.*, No. 01-CV-499, 2001 WL 1835158, at *3 (C.D. Cal. July 23, 2001) ("Once it is determined that the Carmack Amendment governs the carrier's liability, it also governs the enforceability of any forum selection clause contained in the through bill of lading . . . . Thus, the Carmack Amendment essentially prohibits enforcement of forum selection clauses and provides that suit may be brought against a carrier in a forum convenient to the shipper."); *see also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010) (stating in dicta that "if [the Carmack Amendment's] terms apply to the bills of lading here [for rail transportation], the cargo owners would have a substantial argument that the Tokyo forum-selection clause in the bills is preempted by Carmack's venue provisions").

Because the Carmack Amendment contains a special venue provision, Total Quality Logistics' extensive discussion of the Supreme Court's decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, — U.S. —, 134 S.Ct. 568, 580 (2013), which does not involve a statute with a special venue provision, is unhelpful. *See Stewart v. Am. Van Lines*, No. 4:12CV394, 2014 WL 243509, at *4 (E.D. Tex., Jan. 21, 2014) ("In the end, *Atlantic Marine* does not alter the Court's analysis of venue. In this case [involving the shipment of household

goods], Congress has provided a specific venue provision to govern [where] the dispute may be held" so a forum-selection clause is not enforceable).[8] For these reasons, the court finds that the Carmack Amendment's special venue provision, 49 U.S.C. § 14706(d), means that the forum selection clause is not enforceable. The court will revisit this ruling later as necessary if it determines that Total Quality Logistics is a broker, as this finding would take Total Quality Logistics outside the scope of the Carmack Amendment.

**D.     Propriety of Venue in this District**

As discussed above, although Total Quality Logistics disputes that it is a carrier or that it is responsible for DaBecca's loss, its status as a broker versus a carrier cannot be resolved at this stage of the proceedings. To the extent that Total Quality Logistics is a delivering carrier, it may be sued in a state or federal court where it operates (presumably, Ohio, as the amended complaint alleges that it is an Ohio corporation with its principal place of business in Ohio and the forum selection clause specifies that state courts located in Clermont County, Ohio will have exclusive jurisdiction over any disputes between the parties). *See* 49 U.S.C. § 14706(d)(1).

---

[8] *Stewart* also distinguished *Atlantic Marine* because it dealt with two sophisticated businesses, not a consumer trying to move household goods and a large moving company. *Stewart*, 2014 WL 243509, at *5. The *Stewart* court then held that "[u]nder the facts of this case and given Congress's preemptive regulation of household shippers through the Carmack Amendment, the Court holds that enforcement of the forum-selection clause relied upon by the Moving Company Defendants would be unreasonable under the circumstances." *Id*. Contrary to Total Quality Logistics' suggestion, this court does not believe that a passing comment about the level of sophistication of the parties equates to a holding that the Carmack Amendment's venue provisions, 49 U.S.C. § 14706(d)(1) & (2), do not apply to businesses. This is especially true because the Carmack Amendment itself addresses the liability of carriers of non-commercial goods, which by definition are almost certainly likely to be sophisticated entities.

Ironically, the Carmack Amendment thus expressly approves of the forum that is specified in the forum selection clause at issue in this case.

To the extent that Total Quality Logistics is a carrier responsible for loss, it may be sued in the district – federal or state – where the loss occurred. *See* 49 U.S.C. § 14706(d)(2). Presumably, the bacon reached an unsafe temperature somewhere en route from Iowa to Illinois. DaBecca argues that Illinois, where its principal place of business is located, is where it suffered a loss since that is where the bacon was unloaded. But § 14706(d)(2) does not provide that venue is proper where the shipper's principal place of business is located. It provides that suit may be brought "in the judicial district *in which such loss or damages is alleged to have occurred.*" *Id.* (emphasis added).

Moreover, the case that DaBecca cites in support of its principal place of business argument interprets a now-repealed venue provision applicable to rail carriers (not truck carriers) that expressly authorized venue in the shipper's principal place of business. *Seko Air Freight, Inc. v. Direct Transit, Inc.*, 859 F. Supp. 306, (N. D. Ill. 1994) (interpreting 49 U.S.C. § 11707(d)(2)); *Meserole St. Recycling, Inc. v. CSX Transp., Inc.*, No. 06-CV-4652, 2007 WL 2891424, at *3 (E.D.N.Y. Sept. 28, 2007) (declining to follow *Seko* because it relied on a repealed subsection of 49 U.S.C § 11707). As such, DaBecca's reliance on *Seko* to support the position that venue is proper in this district because that is where its principal place of business is located is unavailing.

This means that this case is proceeding in a venue that does not appear to comport with the Carmack Amendment's venue provision, 49 U.S.C. § 14706, since DaBecca has failed to establish that Total Quality Logistics operates in this district or that the loss occurred in this

district. As discussed above, because Total Quality Logistics has challenged venue, DaBecca bears the burden of establishing that its chosen forum is proper. *See Soucy*, 2015 WL 404632, at *5. It has failed to do so.

Where does this leave the claims against Total Quality Logistics? For the time being, the court must accept DaBecca's characterization of Total Quality Logistics as a carrier, since the court cannot resolve the broker versus carrier issue at this stage of the proceedings. DaBecca hung its hat on the Carmack Amendment's venue provision, 49 U.S.C. § 14706(d), but venue does not appear to be proper in this district under that subsection of the Carmack Amendment. The court declines to craft alternative theories supporting venue in this district for DaBecca. The parties are directed to confer. DaBecca – the party who bears the burden of establishing that venue in this district is proper given Total Quality Logistics' challenge to venue– could file an opening brief attempting to justify its choice of venue. However, Total Quality Logistics may wish to file another motion based on this opinion. A status is set for June 17, 2015. In the meantime, Total Quality Logistics' time to file its answer is stayed pending further court order.

## IV. CONCLUSION

For the above reasons, DaBecca's motion for leave to file a sur-reply [35] is granted and Total Quality Logistics' motion to dismiss DaBecca's amended complaint pursuant to Rule 12(b)(3) based on a forum selection clause [22] is denied. DaBecca, however, has not shown that venue is proper in this district under 49 U.S.C. § 14706(d). The court declines to craft alternative theories supporting venue in this district for DaBecca. Consistent with this opinion, a

status is set for June 17, 2015, at 9:30 a.m. to discuss further proceedings. Total Quality Logistics' time to file its answer is stayed pending further court order.


Date:   May 20, 2015                                          /s/
                                                     Joan B. Gottschall
                                                     United States District Judge